No. 57,612

Jayne Werner, *Appellant*, v. Vernon Kliewer, M.D. and Prairie View, Inc., *Appellees*, v. Roger Werner, *Third Party Defendant-Appellee.*

(710 P.2d 1250)

Opinion filed December 6, 1985.

*Karen Black*, of Black and Black, of Salina, argued the cause and was on the brief for appellant.

*Charles E. Hill*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and was on the brief for appellee Vernon Kliewer, M.D.

*Clarence L. King, Jr.*, of King, Adrian, King & Brown, Chartered, of Salina, argued the cause and was on the brief for appellee Prairie View, Inc.

*Patrik W. Neustrom* of Achterberg & Neustrom, of Salina, was on the brief for third-party defendant-appellee Roger Werner.

The opinion of the court was delivered by

Holmes, J.: Jayne Werner, plaintiff in the district court, appeals from an order of summary judgment in favor of defendants, Vernon Kliewer, M.D. and Prairie View, Inc., in her action for damages based upon invasion of privacy and breach of contract.

Pursuant to Supreme Court Rule 3.05 (235 Kan. lxiv) the parties have submitted a prepared statement of facts and issues in the district court in lieu of a record on appeal. The agreed statement provides:

### "STATEMENT OF FACTS

"Plaintiff's petition in district court sought damages for invasion of privacy or, alternatively, breach of contract. Her claim was based on the action of defendant Vernon Kliewer, M.D., who disclosed medical information about her without her consent. Prairie View, Inc. was named co-defendant as Dr. Kliewer's employer.

The defendants then filed a third-party petition against Roger Werner, plaintiff's ex-husband, seeking indemnity in the event plaintiff obtained judgment against them.

"The essential facts for consideration on appeal are as determined by the district court in ruling on defendants' motions for summary judgment.

"In January, 1981, while hospitalized for exhaustion and depression, plaintiff took an overdose of aspirin. Three days after release from this hospitalization, plaintiff took an overdose of 18 antidepressant pills in a suicide attempt.

"In mid-November, 1982, plaintiff was having suicidal feelings. On more than one occasion, she told her husband she was going to commit suicide. On the morning of November 18, 1982, plaintiff took a butcher knife with her in the car and drove toward Lake Kanopolis with the idea of committing suicide.

"Plaintiff voluntarily admitted herself as a patient at Prairie View, Inc. on November 18, 1982. At the time of admission, she was having suicidal thoughts.

"Plaintiff went to Prairie View because she felt they were qualified to help her. Dr. Vernon Kliewer was the physician responsible for examination, diagnosis and treatment of plaintiff. She discussed her suicidal thoughts with Dr. Kliewer and told him of her history of suicide attempts.

"At the time she entered Prairie View, plaintiff was involved in a divorce proceeding in Saline County District Court, before Judge Morris Hoobler. The well-being of her minor children was at issue.

"In November, 1982, plaintiff was having trouble with such things as getting her children ready for school. During this time, plaintiff's children were frightened because of her behavior. Before going to Prairie View, plaintiff did not think about telling anyone where she was going, and did not make arrangements for her children to be taken care of. When plaintiff entered Prairie View, she had no feeling or concern for her family. She first became concerned about her children after she had been at Prairie View for two or three days.

"Prairie View's staff was concerned about plaintiff's welfare and told her she needed further care. Dr. Kliewer told plaintiff's husband that his impression was plaintiff needed further observation and evaluation.

"Plaintiff did not stay at Prairie View long enough to make much progress and, on November 24, 1982, left Prairie View against medical advice.

"Judge Hoobler was concerned about the welfare of plaintiff's children.

"At plaintiff's husband's request, Dr. Kliewer wrote a letter . . . to Judge Hoobler because he felt there should be a determination as to plaintiff's dangerousness. Although Dr. Kliewer did not accept plaintiff's husband's statements literally as fact, he recognized their substance and the need for further investigation of their truth. He believed the statements to be important enough to require further observation and evaluation of the plaintiff.

"The only persons who saw Dr. Kliewer's letter were the court services officer in whose care it was addressed; the judge; and attorneys for the parties.

"Plaintiff suffered no damage to her reputation. She believes Dr. Kliewer wrote the letter at her husband's request. She believes her husband advised Dr. Kliewer of his concern for plaintiff's welfare.

"Plaintiff does not dispute the truth of any of the information contained in the second paragraph of Dr. Kliewer's letter. Plaintiff believes that her husband made all of the comments which are set forth in paragraph three in speaking with

Dr. Kliewer, and that Dr. Kliewer accurately reported the comments made to him by plaintiff's husband. Plaintiff admits that the statement in the letter that her children were frightened about her behavior is true. She believes all of the statements made by Dr. Kliewer in paragraph four of the letter are true. Plaintiff believes that her husband made the statement referred to in paragraph five of the letter, which is attributed to the husband. Plaintiff agrees that the first full paragraph on page two of the letter sets forth nothing other than the doctor's professional opinions. Plaintiff believes that her husband made all of the comments which are attributed to him in Dr. Kliewer's letter. She admits there was no information in the letter that was not already known by her husband. She did not have any objection to the Prairie View staff discussing her care and condition with her husband.

"Plaintiff did not claim damage to her reputation as a result of the letter, nor dispute the truth of the statements in the letter, whether those statements are attributed to her former husband, or are Dr. Kliewer's observations and opinions.

"Plaintiff's petition claimed damages for 'intense mental and emotional anguish' suffered as a result of the defendant's action.

"STATEMENT OF ISSUES

"The legal issues before the trial court were:

A. Whether plaintiff has an actionable claim against the defendant for invasion of privacy.

B. Alternatively, whether plaintiff had a claim against the defendant for breach of contract, on the ground that a convenant not to disclose patient's secrets is part of the contractual relationship between patient and physician."

The letter of which Mrs. Werner complains states in its entirety:

"November 29, 1982

"The Honorable Morris V. Hoobler
c/o John Burchill
Court Service Officer
Box 1746
Salina, Kansas 67401

"RE: Jayne Werner

"Dear Judge Hoobler:

"I am writing at the request of the husband of the above-named individual who is concerned about her as well as their children.

"Jayne Werner was admitted to Prairie View Hospital 11/18/82 when she came suddenly a day ahead of a planned initial appointment. She was extremely distraught, particularly with the prospect of finalizing a divorce from her husband. She claimed having not slept for several nights and having had sleep problems for several weeks. She also had not been eating well for some time. She was preoccupied with suicidal urges and told of being overwhelmed with the responsibility for the children. She wanted no contact with her family at that time.

"On November 23, in a phone call Mr. Werner alleged that Mrs. Werner had frightened the children with her behavior prior to her coming to the hospital

here. She had kept her daughter with her through the night threatening suicide. He alleged also that in the period of a week to ten days prior to her coming here, she had in his hearing and the hearing of their minister threatened suicide as well as threatening death for herself and the children. He reported that she had a long history of fluctuating mood, manipulative behavior and strong self-will.

"Over the next few days after coming to the hospital, Mrs. Werner fairly quickly became settled. However, on November 23 and 24 she became extremely demanding about being dismissed from the hospital stating that her children were very upset because she was here. Family members, however, were reporting that they were upset because of their experience with her. In the evening of November 24, Mrs. Werner left the hospital without authorization, alleging that she had made arrangements with her mother to finance her going to Indiana for continued treatment. She refused to return to the hospital here.

"In a phone conversation with Mr. Werner on November 29, he reported that Mrs. Werner was at home but was still fluctuating widely in her mood and attitude.

"I see this person as being oriented to time, place and person. I did not sense obvious delusion or hallucinations; however, there is obvious discrepancy between how she reports perceiving situations and how they are reported by others. Her affect fluctuated widely while here. She appeared very strongly self-willed and manipulative as well as impulsive. She can appear well organized and stable for brief periods of time.

"It is my opinion in view of the continued pattern of wide mood fluctuation, the impulsiveness and the strong self-will that she continues to represent significant risk of harm to herself. I also believe that the allegations about statements she is to have made regarding harm to her children should not be ignored. It would seem that continued hospital treatment should be implemented until she can demonstrate a longer term stability as an indication of reduction of dangerousness.

"Sincerely yours,

/s/ Vernon L. Kliewer, M.D.
Vernon L. Kliewer, M.D.
Psychiatrist
"VLK:pg"

After discovery was complete, and prior to trial, the trial court granted summary judgment to the defendants Kliewer and Prairie View on all issues and theories asserted by plaintiff. Plaintiff has appealed the trial court's ruling on both her claim of invasion of privacy and her claim of breach of contract.

At the outset it should be noted that summary judgment is only proper where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, 695 P.2d 444 (1985). When summary judg-

ment is challenged on appeal, the appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Credit Union of Amer. v. Myers,* 234 Kan. 773, 676 P.2d 99 (1984).

Appellant's claim of an invasion of privacy is based upon three theories: First, an unreasonable intrusion upon her seclusion as defined in Restatement (Second) of Torts § 652B (1976); second, unreasonable publicity of her private life, Restatement (Second) of Torts § 652D; and third, an implied right to privacy under Kansas law, without regard to Restatement principles. While at common law there was no physician-patient privilege (*Armstrong v. Street Railway Co.,* 93 Kan. 493, 502, 144 Pac. 847 [1914]), most states, including Kansas, have adopted such a privilege by statute. K.S.A. 60-427. The statute precludes physicians from disclosing confidential communications between them and their patients. Thus, the confidentiality of the physician-patient relationship is a matter of strong public policy in Kansas. However, the statutory privilege is subject to several exceptions. K.S.A. 60-427(d) provides:

"There is no privilege under this section in an action in which the condition of the patient is an element or factor of the claim or defense of the patient or of any party claiming through or under the patient or claiming as a beneficiary of the patient through a contract to which the patient is or was a party."

In the Werner divorce proceeding pending before Judge Hoobler, the care and custody of the couple's minor children were in issue. As Jayne Werner was seeking custody of the children in her divorce action, her fitness as a parent and ability to care for her children were issues to be determined by the court. Under such circumstances and to the extent that the otherwise privileged information is relevant to the issue of custody, she is deemed to have waived any statutory privilege under K.S.A. 60-427. *Cf. In re Zappa,* 6 Kan. App. 2d 633, 631 P.2d 1245 (1981).

Two of appellant's arguments asserting an invasion of privacy are based upon the Restatement (Second) of Torts § 652A *et seq.* § 652A provides:

"§ 652A. **General Principle**
    (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
    (2) The right of privacy is invaded by
        (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or

(b) appropriation of the other's name or likeness, as stated in § 652C; or

(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E."

Obviously, § 652C and § 652E are not applicable to the present case. The analysis of the right of privacy contained in the Restatement (Second) of Torts § 652 was adopted in Kansas in *Dotson v. McLaughlin*, 216 Kan. 201, 531 P.2d 1 (1975).

Appellant relies upon § 652B for her first contention that Dr. Kliewer violated her right to privacy by an unreasonable intrusion upon her seclusion. § 652B provides:

"§ 652B. **Intrusion upon Seclusion**

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

A cause of action based upon § 652B was specifically recognized by this court in *Froelich v. Adair*, 213 Kan. 357, 359, 516 P.2d 993 (1973). However, to prevail upon such a claim it is necessary to establish two factors: First, something in the nature of an intentional interference in the solitude or seclusion of a person's physical being, or prying into his private affairs or concerns, and second, that the intrusion would be highly offensive to a reasonable person. Comment b. to § 652B of the Restatement reads:

"The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined."

Does the conduct of Dr. Kliewer meet the necessary tests of § 652B? We think not. Generally, the tort of intrusion upon seclusion is based upon the manner in which an individual obtains information. Several cases are illustrative: installation of

an electronic listening device in a tenant's bedroom, *Hamberger v. Eastman,* 106 N.H. 107, 206 A.2d 239 (1964); taking pictures and peeking through windows with binoculars, *Souder v. Pendleton Detectives,* 88 So. 2d 716 (La. App. 1956); unauthorized prying into the plaintiff's bank account, *Brex v. Smith,* 104 N.J. Eq. 386, 146 A. 34 (1929). See also Prosser and Keeton on Torts § 117, 854-856 (5th ed. 1984). In addition, the intrusion must be highly offensive to a reasonable person. Here, there was no information in the letter written by Dr. Kliewer which would not have been obtainable through customary discovery procedures. Appellant does not deny the truth or accuracy of the contents of the letter and it is admitted that there is nothing in the letter which was not already known by her husband. The welfare and future custody of the minor children were at stake and although it would have been preferable to have followed standard court and discovery procedures, the information revealed, under the circumstances of this case, certainly does not rise to the level of being highly offensive to a reasonable person. Mrs. Werner had previously attempted suicide, had contemplated it the day she checked into the hospital, and had indicated that she might harm the children. While the disclosure of intimate facts and opinions about Mrs. Werner's mental condition would ordinarily be highly objectionable, any such determination must be made in light of the totality of the circumstances. The letter was directed to a judge, who had the direct responsibility of determining the best interests of the minor children and to provide for their care and safety. Under all of the circumstances of this case, the disclosures made by Dr. Kliewer cannot be considered highly offensive to a reasonable person. The trial court was correct in ruling Mrs. Werner had failed to establish a cause of action based upon an intrusion upon her seclusion.

Next, appellant asserts her privacy was invaded under § 652D of the Restatement, which reads:

"§ 652D. **Publicity Given to Private Life**
    One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
        (a) would be highly offensive to a reasonable person, and
        (b) is not of legitimate concern to the public."

This claim, also, lacks merit for several reasons. We have already determined that the contents of the letter could not be consid-

ered "highly offensive to a reasonable person" under the facts of this case. Although a cause of action under § 652D has been recognized in Kansas (*Rawlins v. Hutchinson Publishing Co.*, 218 Kan. 295, 543 P.2d 988 [1975]; *Munsell v. Ideal Food Stores*, 208 Kan. 909, 494 P.2d 1063 [1972]), it is doubtful that these facts would support a finding that the letter was given the necessary publicity required to sustain this claim. Comment a. to § 652D distinguishes "publication" from "publicity" and states, " 'publicity' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." The comment continues, "it is not an invasion of the right of privacy . . . to communicate a [private fact] to a single person or even to a small group of persons." See *Vogel, et al. v. W. T. Grant Company, Aplnt.*, 458 Pa. 124, 132, 327 A.2d 133 (1974), holding communication to four people as insufficient publicity. *Cf. Beard v. Akzona, Inc.*, 517 F. Supp. 128, 132, 133 (E.D. Tenn. 1981); *Brown v. Mullarkey*, 632 S.W.2d 507, 509 (Mo. App. 1982). Here the only publicity was to the court services officer, the district judge handling the divorce action, and the attorneys for the parties, all being officers of the court.

Finally, under § 652D it must be shown that the contents of the letter were "not of legitimate concern to the public." In her brief plaintiff concludes, "[r]evealing a patient's confidences is obviously material that would be highly offensive to a reasonable person; there is no legitimate concern to the public." While we agree most individuals would consider the disclosure of their psychiatric history offensive, it does not automatically follow that the public has no legitimate concern. K.S.A. 60-1610(a)(3) provides the trial court shall determine child custody in accordance with the best interests of the child. In recent years the legislature has demonstrated its concern for the welfare of children by enacting several provisions, including the Kansas Code for Care of Children, K.S.A. 1984 Supp. 38-1501 *et seq.*; the Child Custody Jurisdiction Act, K.S.A. 38-1301 *et seq.*; and the establishment of the Children and Youth Advisory Committee, K.S.A. 1984 Supp. 38-1401. Clearly, the welfare of children is a matter of public policy of great state concern and we have so held numerous times. *In re Adoption of McMullen*, 236 Kan. 348, 352,

691 P.2d 17 (1984); *Sheppard v. Sheppard,* 230 Kan. 146, 149, 630 P.2d 1121 (1981), *cert. denied,* 455 U.S. 919 (1982).

In the present case the plaintiff was diagnosed as suicidal, having unsuccessfully attempted suicide on several occasions. Beyond being suicidal, it appears that on at least one occasion she threatened to kill her children and then commit suicide. In short, the evidence supports Dr. Kliewer's conclusion that the plaintiff represented a significant risk of harm to herself and possibly to her children. In view of the legitimate concern of the State for the welfare of children, the plaintiff's conclusion that no legitimate public interest exists lacks merit. No error is shown.

Lastly, in her claim based upon an invasion of privacy, appellant contends that a cause of action exists outside the scope of the Restatement § 652. Under the facts of this case we need not determine whether such a cause of action might exist under other circumstances. Appellant makes numerous arguments based upon the physician-patient privilege set forth in K.S.A. 60-427, the definition of unprofessional conduct in K.S.A. 65-2837(b)(6), and cases from other jurisdictions which are only partially on point. It is argued that Dr. Kliewer breached a confidential relationship between him and Mrs. Werner. Appellant appears to concede that if there existed a paramount public interest then the disclosure might have been proper but asserts there is no public interest involved except that of the confidentiality of the physician-patient relationship. As already pointed out, such a position totally ignores the overriding public policy involving the safety, care and welfare of minor children. See Annot., 10 A.L.R. 4th 576. We find no merit in appellant's contentions that this case merits the adoption of a cause of action for invasion of privacy separate and distinct from those contained in § 652 of the Restatement.

As an alternative to her action for invasion of privacy, Mrs. Werner asserts that defendants are liable under a breach of contract theory. The trial court, relying upon *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 552 P.2d 885 (1976), granted the defendants' motion for summary judgment holding that the claim sounded in tort and not in contract. In her brief, appellant appears to contend that a breach of the confidentiality which exists between physician and patient constitutes a breach of an express warranty. Obviously, from the agreed

statement of facts, no express warranty was involved. Although we have held that a physician may bind himself by an express warranty, the facts here merit no such finding. See *Noel v. Proud*, 189 Kan. 6, 367 P.2d 61 (1961). In *Malone* we stated:

"A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course, be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties.

"Physicians, as well as hospitals, may enter into express contracts by which they bind themselves to warrant the success of treatment, or to otherwise obligate themselves above and beyond their ordinary duties. Such contracts may form the basis for breach of contract actions. *Noel v. Proud*, 189 Kan. 6, 367 P.2d 61, is illustrative." 220 Kan. at 374.

The court quoted from *Yeager v. Dunnavan*, 26 Wash. 2d 559, 174 P.2d 755 (1946), to the effect that:

" '. . . When an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract, *but where there is a contract for services which places the parties in such a relation to each other that, in attempting to perform the promised service, a duty imposed by law as a result of the contractual relationship between the parties is violated through an act which incidentally prevents the performance of the contract, then the gravamen of the action is a breach of the legal duty, and not of the contract itself. . . .'* (p.562.)" pp. 375-76.

While we recognize that the public policy embodied in the physician-patient privilege and the physician's duty to maintain the confidentiality of the relationship warrants great deference, it must be balanced against competing interests of the State, including its public policy relating to the care and protection of children. Under the facts of this case, where potential physical harm, not only to Mrs. Werner but also to her minor children, was involved, we have no hesitancy in holding that the disclosure by Dr. Kliewer to Judge Hoobler did not constitute such conduct as warrants liability on the part of the defendants on either an invasion of privacy or breach of contract theory. We do emphasize, however, that the better procedure would be to refrain from any such disclosure except under the auspices and direction of the trial court through discovery, a motion in limine, in-camera inspection, or such other protective procedure as may be appropriate.

The judgment is affirmed.