Earl S. FIELDS, Plaintiff,

v.

The ATCHISON, TOPEKA, AND SANTA FE RAILWAY COMPANY, Terry Reardon, Burton L. Buser, Paul Hoferer, and John Does 1–10, Defendants,

and

Linda McVICKER, Plaintiff,

v.

Burton L. BUSER, and John Does 1–10, Defendants.

Civ. A. Nos. 95–4026–GTV, 95–4027–GTV.

United States District Court,
D. Kansas.

Nov. 25, 1997.

Jean A. Lamfers, Lamfers & Maneke, L.C., Kansas City, MO, for Earl S. Fields, Linda McVicker.

Nola Wright Viola, Frieden, Haynes & Forbes, Topeka, KS, James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, Paul R. Hoferer, Burlington Northern Santa Fe Railroad, Ft. Worth, TX, for Atchison, Topeka and Santa Fe Ry. Co.

Nola Wright Viola, Frieden, Haynes & Forbes, Topeka, KS, James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Terry Reardon.

James S. Pigg, Fisher, Patterson & Smith, Topeka, KS, for Paul Hoferer.

Jonathan B. Phelps, Phelps-Chartered, Topeka, KS, for Burton L. Buser.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiffs bring this action for damages alleging defendants violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, and the Kansas Wiretap Act, K.S.A. 22–2518, and invaded their privacy by intercepting, using, and/or disclosing the contents of plaintiffs' private telephone communications. The case

is before the court on defendants Hoferer, the Atchison, Topeka, and Santa Fe Railway Company (Santa Fe), and Reardon's motion for summary judgment (Doc. 206). These defendants seek summary judgment on Fields' invasion of privacy claim, his claims brought pursuant to the state and federal wiretap statutes, and his claim for punitive damages. For the reasons set forth, defendants' motion for summary judgment (Doc. 206) is granted in part and denied in part:

1. Summary judgment is granted to defendants Hoferer, Reardon, and Santa Fe as to the invasion of privacy claim.

2. Summary judgment is granted to defendants Hoferer, Reardon, and Santa Fe as to the claim for punitive damages.

3. Summary judgment is granted to defendant Hoferer as to the claims brought pursuant to the state and federal wiretap statutes.

4. Summary judgment is denied to defendants Santa Fe and Reardon as to the claims brought pursuant to the state and federal wiretap statutes.

*I. Factual Background*

The following facts are either uncontroverted or based on evidence viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported in the record are omitted.

In January 1995, defendant Terry Reardon was superintendent of the Eastern Division of defendant the Atchison, Topeka and Santa Fe Railway Company. Plaintiff Fields was an assistant superintendent who reported to Reardon. Santa Fe employed defendant Paul Hoferer as an attorney in its Topeka, Kansas office. On January 25, 1995, Reardon received a letter by mail dated January 22, 1995 and an audio cassette tape. The letter was addressed to Santa Fe's CEO, Robert Krebs. Copies of the letter and the tape were also sent to Santa Fe's employees Terry Reardon, Jim Hankins, and Steve Hefley and a non-employee Burton Buser. The letter read that it was from "Some dedicated employees of Santa Fe, Newton and Kansas City, Kansas." The letter conveyed the following: there existed a "love affair" between Sandy Fields and co-employee, Linda McVicker; Fields had expressed to McVicker that he "would like to have physical and bodily harm done to Buser," who had "an ongoing relationship with McVicker and stands in the way of Fields"; and Fields stated to McVicker that it "was nice Santa Fe Company was providing the love line for their conversations as it saved them hundreds of dollars." Finally, the letter read: "We came by a tape of several conversations between Fields and McVicker that we feel shows what is going on here."

On January 25, 1995, Reardon and Hefley met and listened to excerpts from the tape. That evening, Reardon listened to the tape again. Reardon informed his supervisor, David Dealy, that he had received and listened to the tape. Reardon reported to Dealy that, due to the contents of the tape, he believed Fields and McVicker were having an affair and that Fields had not been truthful about this relationship. Reardon's suspicions were based on the following events occurring in 1994. In December 1994, Reardon learned that Fields and McVicker were allegedly having an affair. Reardon asked Fields if this was true; Fields denied the accusation. From Reardon and Dealy's conversation, it was decided that Fields should be terminated if Field's voice could be verified as the one on the tape.

Reardon called Fields and asked him to come to his office in Kansas City. Prior to this meeting, Reardon met with Hoferer and played the tape for Hoferer. On January 26, 1995, Fields met with Reardon, Hoferer, and Santa Fe special agent Tom Moore. Reardon said that there was something he wanted Fields to listen to and began to play the tape. Fields immediately recognized that the tape was a recording of McVicker and himself. Reardon asked if it was, in fact, Fields on the tape; Fields confirmed that it was. Fields asserts that he advised Reardon that the tape was the result of an illegal wiretap of a private phone conversation. He then asked Reardon how he came to have the tape. Reardon responded that the tape had been received by mail. Reardon told Fields that he believed Fields had lied and that he could not trust him anymore. Reardon then gave Fields the choice of resignation or termination. When Fields refused to resign, Reardon fired him.

Other statements made at this meeting are disputed by the parties. Reardon and Hoferer testified that during this meeting, Fields informed Reardon that he did not care how much of the tape was played and that Reardon could play as much of the tape as he wanted. Moore testified that, after the tape was played for a few minutes, Fields was asked how much more of the tape he wanted to hear. Fields said he did not care and the tape was shut off. Finally, Fields testified that he did not recall consenting to the playing of the tape, and he claims he asked for the tape to be turned off. Hoferer testified that he did not form any opinion about the legality of listening to or using the tapes at the time of Fields' termination. Despite having no formed opinion, Hoferer believed that it was perfectly legal to play the tapes.

Santa Fe's phone system permits its employees with an access number to call from an outside phone and access the Santa Fe system to place long distance calls. Although Fields had access to the phone system in January 1995, defendants do not allege that the recorded call was made on Santa Fe's system. Furthermore, Santa Fe does not monitor employee phone conversations made on its system.

Additional facts will be provided as necessary.

## II. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325, 106 S.Ct. at 2553–54. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See id. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. See id. at 254, 106 S.Ct. at 2513.

### III. Discussion

#### A. Consent

█ Defendants contend that Fields' invasion of privacy claims and his claims under the federal and state wiretap statutes are barred because he consented to the playing of the tape at the January 26, 1995 meeting. The court disagrees. Defendants do not dispute that defendants Reardon and Santa Fe, through its agents, listened to and disclosed the contents of the tape prior to contacting Fields. Defendants also admit that Fields was unaware of what the recording was until he actually heard it at the January 26, 1995 meeting. (See Defs.' Mot. for Summ. J., at 25). Fields could not have given his knowing consent to the playing of the tape at or prior to the January 26, 1995 meeting.

#### B. Invasion of Privacy Claims

Fields claims defendants violated his privacy rights by listening to the recorded conversation after they knew the conversations were of a private nature and illegally recorded. Defendants contend that merely receiving unsolicited tapes and listening to them is not sufficient to support a claim of invasion of privacy.

"The Kansas Supreme Court has recognized a cause of action for invasion of privacy and has utilized the four distinct tort theories set forth in Restatement (Second) of Torts §§ 652B–652E." *Ali v. Douglas Cable Communications,* 929 F.Supp. 1362, 1381 (D.Kan.1996) (citing *Froelich v. Adair,* 213 Kan. 357, 358, 516 P.2d 993 (1973)). "The right of privacy is invaded by (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or (b) appropriation of the other's likeness, as stated in § 652C; or (c) unreasonable publicity given to the other's private life, as stated in § 652D; or (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E." *Werner v. Kliewer,* 238 Kan. 289, 293–94, 710 P.2d 1250, 1255 (1985) (citing Restatement (Second) of Torts 652 (1977)). The relevant subsections are discussed below.

### 1. Publicity to Private Affairs (§ 652D) and Publicity in a False Light (§ 652E)

An actionable claim under sections 652D or 652E requires that defendants give "publicity" to a matter concerning the plaintiff. *Ali,* 929 F.Supp. at 1383. Publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." § 652D cmt. a. There is no invasion of privacy if the private matter is communicated to "a single person or even to a small group of persons." *Id.*

In this case, Robert Krebs, Reardon, Hankins, and Hefley received copies of the tape. Combined, these four men only communicated the "private matter" to two other persons: Hoferer and Moore. Fields has not established that there was widespread disclosure as required by sections 652D and 652E.

### 2. Intrusion Upon Seclusion (§ 652B)

To prevail on a § 652B action for intrusion upon seclusion, it is necessary to establish two factors: "First, something in the nature of an intentional interference in the solitude or seclusion of a person's physical being, or prying into his private affairs or

concerns, and second, that the intrusion would be highly offensive to a reasonable person." *Werner,* 238 Kan. at 294, 710 P.2d at 1255. "Consequently, it is both the manner of intrusion as well as the nature of the information acquired that must rise to the level of being highly offensive to a reasonable person." *Ali,* 929 F.Supp. at 1382.

Defendants argue that the manner of their alleged intrusion was not offensive to a reasonable person. Defendants Reardon, Hoferer, and Santa Fe neither intercepted the private communication nor solicited copies of any private communications—they did nothing but listen to the tapes. However, Fields contends that this very conduct of listening to the tapes after knowing they were private and illegally acquired constitutes a violation of his privacy rights. The court does not agree. Fields' theory of liability cannot be reconciled with the language of § 652B. Moreover, Fields provides this court with no case law to support his contention. This, however, is not surprising as the court was able to find only one case addressing this issue with any specificity.

In *Beard v. Akzona,* the district court for the Eastern District of Tennessee found that the mere act of hearing an illegally taped conversation was not an invasion of privacy. 517 F.Supp. 128, 132 (E.D.Tenn.1981). The plaintiff in *Beard,* her husband, and her boyfriend were employees of the defendant Akzona, Inc. Suspecting an affair, the husband tapped his own phone and recorded incriminating conversation between plaintiff and her boyfriend. Upon learning of these taped conversations, one of defendant's agents requested copies of the tapes, listened to the tapes, and, subsequently, fired plaintiff and the boyfriend. The plaintiff filed suit claiming an invasion of her privacy.

Applying section 652B, the *Beard* court found no invasion of privacy and entered a judgment notwithstanding the verdict in favor of the defendant:

The record is devoid of any proof that the defendant in this case, Akzona, Inc., at any time itself intentionally intruded upon plaintiff's solitude or seclusion, or that it ordered or authorized any such intrusion

by any employee or agent acting in that capacity. Plaintiff's claim of intrusion cannot, therefore, support the jury's verdict. *Id.* This court agrees with this application of § 652B. Accordingly, the court finds defendants did not intrude upon Fields' seclusion and grants summary judgment to defendants on Fields' state law invasion of privacy claims.

### C. Violations of Federal and State Wiretap Statutes

Fields alleges defendants violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. §§ 2510 *et seq.,* and the Kansas Wiretap Act, K.S.A. 22–2518. These statutes provide a civil cause of action to any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of the statute. *See* 18 U.S.C. § 2520; K.S.A. 22–2518. The Kansas statute is patterned after Title III. *State v. Maley,* 8 Kan.App.2d 553, 555, 662 P.2d 269, 272 (1983). "Hence, federal case law in this area is generally, if not universally, treated as controlling." *State v. Willis,* 7 Kan.App.2d 413, 413, 643 P.2d 1112, 1114 (1982).

■ Fields does not claim defendants Reardon, Hoferer, or Santa Fe actually intercepted his private communications. Rather, he claims they "used" or "disclosed" the contents of his private communication in violation of the state and federal statutes. The relevant portion of § 2511 provides:

(1) Except as otherwise specifically provided in this chapter any person who—
\*\*\*
(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of wire, oral, or electronic communication in violation of this subsection; or
(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of wire, oral, or

electronic communication in violation of this subsection;

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)

. . . .

To prevail on a use or disclosure claim, a plaintiff must prove that the use or disclosure was intentional and that the defendant knew or had reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of § 2511. *Thompson v. Dulaney,* 970 F.2d 744, 749 (10th Cir.1992). "For example, it is not enough to show that a defendant merely knew he was using or disclosing information from an intercepted communication. It must also be shown that the defendant knew, inter alia, that neither party to the intercepted conversation had consented to the interception." *Id.* Defendant Hoferer claims that he did not use or disclose the contents of the tape and that he did not know, nor did he have reason to know, that the tape was the product of an illegal wiretap. Defendants Reardon and Santa Fe do not deny using or disclosing the contents of the tape. However, they claim that they did not violate either statute because they did not know, nor did they have reason to know that the tape was the product of an illegal wiretap.

### 1. Use or disclosure by defendant Hoferer

■ Defendant Hoferer argues that he neither "used" or "disclosed" the contents of Fields' private communication and, therefore, has not violated either the state or federal statute. Plaintiff acknowledges that defendant Hoferer's only involvement with the tape in question was listening to it fully on one occasion and partially on two other occasions. Plaintiff also claims Hoferer "endeavored to disclose the contents to others, including Mr. Fields and Mr. Moore," but he provides the court with no factual support for this allegation. The question for the court, therefore, is whether merely listening to an illegally obtained communication violates § 2511.

Plaintiff relies on *Thompson v. Dulaney*, 838 F.Supp. 1535 (D.Utah 1993) to support his position. In *Thompson*, the court found that listening to a tape amounted to "use" in violation of § 2511. *Id.* at 1547. *Thompson*, however, is not binding precedent, and the court declines to follow it. Rather, the court agrees with defendants that the federal wiretap statute is directed against conduct of intercepting private wire conversations, disclosing those conversations to others, or using those conversations for some purpose.

■ It is well-settled that criminal statutes must be strictly construed in favor of the persons subject to their operation. *See United States v. Kozminski*, 487 U.S. 931, 952, 108 S.Ct. 2751, 2764–65, 101 L.Ed.2d 788 (1988). "The rule of strict construction simply means that ordinary words are to be given their ordinary meaning." *General Foods Corp. v. Priddle*, 569 F.Supp. 1378, 1382 (D.Kan.1983). Webster's Third New International Dictionary (1986) defines the verb "use" as "to put into action or service" and, it offers "employ," "utilize," and "apply" as close synonyms. The court concludes that the conduct of listening does not fall within the definition of "use." Because defendant Hoferer did not use or disclose the contents of the tape, it is unnecessary to discuss whether he knew or should have known the wiretap was illegal. Accordingly, summary judgment is granted to defendant Hoferer as to the federal and state wiretap claims.

### 2. Defendants Reardon and Santa Fe's knowledge of the wiretap's illegality

■ "Although a defendant is presumed to know the law, to establish use and disclosure liability under Title III, a defendant must be shown to have been aware of the factual circumstances that would violate the statute." *Thompson*, 970 F.2d at 749. Defendants Reardon and Santa Fe claim they did not know that the tape was a product of an illegal wire tap until the meeting with Fields. They further claim that after Fields informed them that the wiretap had been illegal, neither defendant, personally or through an agent, continued to use or disclose the intercepted communication in violation of the statute. Fields contends defen-

dants reasonably should have known the tape was illegally intercepted and that defendants continued to listen to the tape after Fields informed them of its illegality.

Whether defendants knew or had reason to know that the tape was the product of an illegal wiretap is a material fact in this case. In his deposition, plaintiff states that defendants continued to play the tape after they were informed of the illegal wiretap. Furthermore, plaintiff asserts that the suspicious circumstances surrounding the acquisition of the tapes should have put defendants on notice of the tape's possibly illegal origin. The court finds that there exist genuine issues as to whether defendants had reason to know of the wiretap's illegality. Pursuant to Fed.R.Civ.P. 56(c), summary judgment is denied to defendants Reardon and Santa Fe on this issue.

### D. Intracorporate Exchange of Information

■ Plaintiff claims that each playing of the tape represents a separate "disclosure" in violation of Title III. Defendants contend the opposite, claiming that defendant Santa Fe and its management employees acting within their scope of employment are not separate entities. Therefore, according to defendants, it is impossible for one entity to disclose information to itself. The court finds defendants' argument unpersuasive.

Under section 2511, a violation of Title III occurs when "any person" knowingly and intentionally discloses the contents of an illegally intercepted communication "to any other person." Therefore, each time defendant Reardon or another of defendant Santa Fe's employees knowingly disclosed the contents of the audio tape, Title III was violated. Under § 2520, therefore, plaintiff may file a civil action to recover for each violation. Accordingly, defendants' motion for summary judgment is denied on this issue.

### E. Punitive Damages Claim

■ Defendants contend that Fields' claim for punitive damages should be barred for failure to comply with Rule 26(a). The court agrees. In pertinent part, Fed. R.Civ.P. 26(a) states:

(1) Initial Disclosures. Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without awaiting a discovery request, provide to other parties:

\*\*\*

(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;

\*\*\*

Unless otherwise stipulated or directed by the court, these disclosures shall be made at or within 10 days after the meeting of the parties under subdivision (f). A party shall make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

Plaintiff's initial Rule 26 disclosure stated that "Mr. Fields also intends to seek punitive damages and this aspect of his damages has not been calculated because we do not have the information necessary to do so at this time." Plaintiff failed to supplement his disclosure to the court or to defendants until after the pretrial conference. When plaintiff finally chose to disclose his request for punitive damages, he sought $110 million.

Plaintiff attempts to justify his tardiness by claiming that he was only able to formulate a punitive damage claim upon receipt of defendants' documents associated with corporate and personal earnings. The language of rule 26(a) is clear: a party is "not excused from making its disclosures because it has not fully completed its investigation of the case." Furthermore, plaintiff's argument is not only ineffectual under Rule 26, it is disingenuous. Plaintiff's punitive damage claim does not take the relative or actual income of any of the defendants into consideration.

Accordingly, plaintiff's claim for punitive damages is barred, and summary judgment is granted to defendants on this issue.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 206) is granted in part and denied in part:

1. Summary judgment is granted to defendants Hoferer, Reardon, and Santa Fe as to the invasion of privacy claim.

2. Summary is granted to defendants Hoferer, Reardon, and Santa Fe as to the claim for punitive damages.

3. Summary judgment is granted to defendant Hoferer as to the claims brought pursuant to the state and federal wiretap statutes.

4. Summary judgment is denied to defendants Santa Fe and Reardon as to the claims brought pursuant to the state and federal wiretap statutes.

Copies of this memorandum and order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**