**Pamela A. DORRIS, et al., Plaintiffs–Appellees,**

v.

**Charles ABSHER and Della Absher, Defendants–Appellants.**

No. 97–6206.

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 28, 1999.

Decided June 2, 1999.

W. Gary Blackburn, Blackburn, Slobey, Freeman & Happell, Nashville, TN, for Plaintiffs–Appellees Pamela A. Dorris and Pennie Hodges.

William J. Shreffler (briefed), Blackburn, Slobey, Freeman & Happell, Nashville, TN, for Plaintiff–Appellee Pamela A. Dorris.

Samuel A. Baron, Goodlettsville, TN, for Plaintiffs–Appellees Marty Scruggs and David Scruggs.

Vanessa R. Comerford (briefed), Hughes & Coleman, Nashville, TN, for Defendants–Appellants.

Before: MARTIN, Chief Judge; RYAN and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Charles Absher, the Director of Rabies Control for Sumner County, Tennessee, secretly recorded conversations among four of his employees by placing a tape recorder in their common office. He then disclosed the recordings to his wife and others, and used the same in an attempt to discharge two of the employees. All four employees subsequently brought suit against Charles Absher and his wife, Della Absher, based upon the Abshers' alleged violations of the "wiretapping statute," 18 U.S.C. § 2510–2522. This statute generally prohibits the unauthorized recording, disclosure, or use of electronically intercepted communications. The district court granted summary judgment in favor of the employees and awarded a total of $220,000 in damages against the Abshers, an amount it arrived at by multiplying the $10,000 liquidated-damage figure set forth in the statute times the number of alleged violations. For the reasons set forth below, the judgment of the district court is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings consistent with this opinion.

## I. BACKGROUND

Charles Absher and the four employees all worked at the Rabies Control Center in Gallatin, Tennessee. The center consists of one large room, which all employees share, and an adjoining bathroom that is also used for storage. On two occasions several days apart, Charles Absher placed a tape recorder on the top shelf of a cabinet in the storage room/bathroom of the Rabies Control Center and secretly recorded the conversations of the four employees. The conversations were of a highly personal nature, and included harsh criticism of Charles Absher. No one other than the four employees was present during the conversations, and the conversations stopped whenever a car pulled into the building's driveway or the telephone was being used.

Charles Absher subsequently played the recordings on two occasions. First, he played them for his wife, Della Absher, and a friend, Irene McCreary, at the Abshers' residence. Second, he played the tapes for his friends Charles and Clarice Talley at the Talleys' residence. Based on the information contained in the recordings, Charles Absher dictated and his wife transcribed termination notices for employees Pamela Dorris and Marty Scruggs. The notices summarized the reasons for the terminations, using information derived from the tapes. Absher presented the notices to the two employees on March 28, 1996, and informed Pamela Dorris that if she did not leave the premises immediately, he would have her removed by a police officer. That same afternoon, however, Sumner County Executive Thomas Marlin met with the discharged employees and rescinded the terminations. The two employees thus lost neither pay nor any benefits. All of these events took place within a span of eight days in March of 1996.

Shortly thereafter, all four employees brought suit against Charles Absher, Della Absher, and the county based upon alleged violations of the wiretapping statute.

They also brought claims for violations of 42 U.S.C. § 1983 (prohibiting the deprivation of federal constitutional rights under color of state law) and for the intentional infliction of emotional distress. All claims against the county have since been settled. After the employees' actions were consolidated, the district court granted summary judgment in their favor under the wiretapping statute. The employees then voluntarily dismissed their civil rights and intentional infliction of emotional distress claims.

Because the Abshers did not address the issue of damages in their response to the employees' motion for summary judgment, the district court held that the Abshers had waived their right to challenge the same. It then awarded the employees the full amounts that they had sought, which was based on the application of the $10,000 fixed sum set forth in the wiretapping statute to each illegal interception, disclosure, or use of the recorded oral communications. Employees Pamela Dorris and Marty Scruggs were awarded $50,000 apiece against Charles Absher on the theory that he had recorded them, disclosed the contents of the recording on two separate occasions, and used the contents of the recording twice (once by writing the termination notices and once by actually terminating them). They were also awarded $20,000 apiece against Della Absher on the theory that she had twice "used" the tapes, once by listening to them and again by writing the termination notices that her husband had dictated to her.

Pennie Hodges and David Scruggs, the other two employees, were awarded $30,000 each against Charles Absher on the theory that he had recorded them, and had then disclosed the contents of the tape twice. They were also awarded $10,000 each against Della Absher because she had "used" the tapes when she listened to them.

The total damages awarded against the Abshers amounted to $220,000. This consisted of $160,000 against Charles Absher and $60,000 against Della Absher. The Abshers now appeal, contending that they should not be held liable at all under the wiretapping statute, and that even if they are liable, the damages awarded against them were not properly calculated.

## II. ANALYSIS

### A. Standard of review

We review *de novo* the district court's grant of summary judgment. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. PRO. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505.

### B. Liability

#### 1. *Reasonable expectation of privacy*

■ The Abshers contend that the employees did not have a legitimate expectation of privacy in the Sumner County Rabies Control Office, so that the wiretapping statute could not have been violated. Subject to the various qualifications and limitations set forth in the statute, § 2520 provides a private right of action to any person whose wire, oral, or electronic communication is illegally "intercepted, disclosed, or intentionally used...." The term "oral commu-

nication" is defined to mean "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception *under circumstances justifying such expectation. . . .* " 18 U.S.C. § 2510(2) (emphasis added).

 A person whose communication is illegally intercepted must have an expectation of privacy that is both subjectively and objectively reasonable. *See, e.g., McKamey v. Roach,* 55 F.3d 1236, 1239–40 (6th Cir.1995) (holding that there was no reasonable expectation of privacy in communications over a cordless telephone because such an expectation is not objectively reasonable). In the present case, the frank nature of the employees' conversations makes it obvious that they had a subjective expectation of privacy. After all, no reasonable employee would harshly criticize the boss if the employee thought that the boss was listening.

The essential question, therefore, is whether this expectation of privacy was objectively reasonable. We believe that the facts of this case make clear that it was. The conversations took place only when no one else was present, and stopped when the telephone was being used or anyone turned onto the gravel road that was the only entrance to the office. The record thus indicates that the employees took great care to ensure that their conversations remained private.

Moreover, the office was a small, relatively isolated space. The employees could be sure that no one was in the building without their knowledge. The Abshers rely on *Kemp v. Block,* 607 F.Supp. 1262 (D.Nev.1985), a case in which the employee-plaintiffs, who worked in a single room, were found to have had no reasonable expectation of privacy. In that case, however, the single room was part of a larger office complex, meaning that others could easily overhear their conversations. In contrast, the entire office in the present case consisted of a single room that could not be accessed without the employees'

knowledge. We therefore conclude that the employees had a reasonable expectation of privacy in their workplace.

### 2. Charles Absher

 Charles Absher raises no further defenses to liability under the statute. Even after viewing all of the facts and inferences in the light most favorable to him, we find no genuine issues of material fact that would preclude the entry of summary judgment against him. We thus affirm this portion of the district court's decision.

### 3. Della Absher

### i. Not reaching the issue would be a miscarriage of justice

 Although the four employees were entitled to summary judgment against Charles Absher, a serious question exists as to whether the actions of Della Absher violated the statute. Because this issue is not raised in the Abshers' brief, however, we would typically consider the issue waived. *See Brindley v. McCullen,* 61 F.3d 507, 509 (6th Cir.1995) (holding that the plaintiffs, by not briefing the question, had waived their appeal of the district court's decision not to sever their legal from their equitable civil right claims). But this rule is not jurisdictional, and the court may choose to entertain arguments not raised by the parties when the failure to do so would constitute a miscarriage of justice. *See Mayhew v. Allsup,* 166 F.3d 821, 823–24 (6th Cir.1999) (holding that the court would consider the application of a statute helpful to the defendant despite his failure to address it either at trial or on appeal when the failure to do so would constitute a miscarriage of justice).

We recognize that *Mayhew* applies only to "exceptional" cases. *See id.* This case, however, meets that criterion because we have concluded that the district court's disposition as to Della Absher was based on an erroneous interpretation of the stat-

ute. Moreover, the claims against Della Absher present a pure question of law, with no material facts being in dispute. Finally, the damages awarded against her appear disproportionate to her conduct. These considerations, taken together, are sufficient to overcome the very high bar against this court addressing issues neither raised below nor briefed on appeal. We will therefore exercise our discretion to reach the merits of the summary judgment motion against her because we believe that a failure to do so would constitute a miscarriage of justice. *See id.*

*ii. Della Absher did not violate the statute*

■ Della Absher's role in this controversy involved listening to the communications intercepted by her husband and typing out the termination notices dictated by him. The employees argue that this violated the statute in two ways. First, they contend that listening to the tape made by Charles Absher constituted "use" of an intercepted communication. Second, they contend that when Della Absher took dictation from her husband, she was "using" the tapes.

The question of whether the passive act of listening to an intercepted communication is an illegal "use" of that communication is an issue of first impression in this circuit. We have found only one court that has ever held that listening to an illegally intercepted communication, without more, constitutes illegal use. *See Thompson v. Dulaney,* 838 F.Supp. 1535, 1547 (D.Utah 1993) (holding that listening constituted "use" in a divorce dispute involving the wiretapping statute). Other courts, however, have concluded that simply listening to an illegally intercepted communication is insufficient for liability to attach. *See Reynolds v. Spears,* 93 F.3d 428, 432–33 (8th Cir.1996) (holding that listening does not equal "use" under the wiretapping statute); *Fields v. Atchison, Topeka, and Santa Fe Ry. Co.,* 985 F.Supp. 1308, 1313–14 (D.Kan.1997) (same).

■ The word "use" is defined as "to put into action or service." *Webster's New Third International Dictionary* 2523 (1986). Using is best understood as active, while listening is passive. In everyday speech, the two words are not typically considered to be interchangeable. Congress could have explicitly proscribed "listening" if such had been its intent, but did not. We therefore hold, as a matter of law, that listening alone is insufficient to impose liability for "using" illegally intercepted communications. As a result, summary judgment for the employees was inappropriate to the extent that it was based on Della Absher's listening to the tape.

We turn next to Della Absher's taking dictation. There is no doubt that an individual who composes a letter based on intercepted communications would be "using" those communications. In this case, however, the record reveals that it was Charles Absher who composed the letters, and that Della Absher did nothing more than take dictation from him. We conclude that transcribing a letter that someone else composed from information based on illegally intercepted communications is too indirect to be considered a further "use" of those communications. Della Absher's role was exclusively mechanical. She simply transcribed Charles Absher's words. Although Charles Absher surely "used" the illegally intercepted communications, Della Absher did not.

The four employees have thus failed to present a viable legal theory under which liability can attach to Della Absher. Because there are no disputed facts, she is therefore entitled to judgment as a matter of law. Accordingly, the entry of summary judgment against Della Absher is reversed, and judgment is hereby granted in her favor.

**C. Damages**

*1. Statutory damages*

■ This appeal also implicates significant issues relating to the proper measure

of damages under the wiretapping statute. Such issues are questions of law which this court reviews *de novo*. *See U.S. Structures, Inc., v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir.1997).

The Abshers contend that the district court abused its discretion by awarding statutory damages in the amount of $10,000 for each violation of 18 U.S.C. § 2520. That section provides in pertinent part as follows:

> (a) In general.—... [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.
>
> (b) Relief.—In an action under this section, appropriate relief includes—
>
> . . .
>
> (2) damages under subsection (c) and punitive damages in appropriate cases; . . .
>
> . . .
>
> (c) Computation of damages.—
>
> . . .
>
> (2) In any other action under this section, the court may assess as damages whichever is the greater of—
>
> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
>
> (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

Subsection (c) contemplates three different measures of damages. First, a plaintiff may recover actual damages and any profits made by the violator as a result of the violation. *See* 18 U.S.C. § 2520(c)(2)(A). Second, a plaintiff may receive statutory damages of $100 per day for each day of the violation. *See* 18 U.S.C. § 2520(c)(2)(B). Finally, the plaintiff may recover the flat sum of $10,000 if

that is larger than the $100 per day. *See id.*

### 2. The "single sum" approach

The question before us is whether the district court erred in holding that the $10,000 statutory award available under 18 U.S.C. § 2520(c)(2)(B) may be multiplied by each violation of the statute. Our research has revealed that the only appellate case directly addressing the issue of the proper calculation of damages under § 2520(c)(2) is *Jacobson v. Rose*, 592 F.2d 515 (9th Cir.1978). *Jacobson* analyzed Congress's intent and held that the liquidated damage award (then $1,000) under § 2520(c)(2) should be imposed against all defendants jointly, not against each defendant individually. *See id.* at 520–21. Because we have concluded that Della Absher has no liability under the facts of this case, and because *Jacobson* did not deal with multiple violations (as opposed to multiple defendants), the holding in *Jacobson* provides no guidance on the damage issue before us.

Although there are a few other circuit court cases that appear on the surface to allow the $10,000 figure to be used as a multiplier, close analysis reveals that the question was either not an issue on appeal (*see, e.g., Deal v. Spears*, 980 F.2d 1153, 1156 n. 5 (8th Cir.1992)), or that the case was decided on other grounds by the court (*see, e.g., Rodgers v. Wood*, 910 F.2d 444, 446 (7th Cir.1990)). Two district court opinions have squarely ruled on the issue, however, and both have concluded that the $10,000 figure may be used as a multiplier for repeated violations of the statute. *See Romano v. Terdik*, 939 F.Supp. 144, 150 (D.Conn.1996) (holding that $10,000 may be awarded for interception and $10,000 for disclosure, but awarding only $10,000 because there was no disclosure); *Menda Biton v. Menda*, 812 F.Supp. 283, 285 (D.P.R.1993) (awarding $10,000 for illegally recording a conversation, and $10,000 more for its disclosure). But these district court cases present neither significant dis-

cussion nor persuasive reasoning in support of their holdings. Instead, they rely exclusively on four appellate cases, including the Seventh and Eight Circuit cases cited above, none of which directly addresses the issue of § 2520(c)(2)'s proper interpretation.

We also note that this circuit's only previous case interpreting the wiretapping statute has no bearing on the issue before us. In *Fultz v. Gilliam*, 942 F.2d 396 (6th Cir.1991), this court held that each time a wiretap communication is disclosed, the clock is reset for the purposes of the statute of limitations. *Fultz* stated that "[t]he text of the Wiretapping Act plainly indicates, and its purpose necessitates, that a new and discrete cause of action accrue[s] ... each time" the statute is violated. *Id.* at 402. In contrast, the issue in the present case is not when a particular cause of action accrues, but the amount of damages that may be imposed if the plaintiff prevails. Because *Fultz* was remanded for further proceedings on the merits, the court never reached the issue of whether the $10,000 statutory damage award was to apply to "each violation."

■ We therefore find ourselves without persuasive precedent to aid in our interpretation of the statute. As a result, we begin with the plain language of the statute itself. The only statutory authorization for damages "per violation" is the "$100 a day for each day of violation." *See* 18 U.S.C. § 2520(c)(2)(B). The $10,000, in contrast, stands alone, and is not accompanied by any language authorizing multiplication "per violation." *See id.* Congress knows how to specify an award that is to be multiplied on the basis of the frequency of the violation, because it did so by providing for damages of $100 per day for each day of violation. Thus, if a violation continues for several days because the defendant keeps using or disclosing an illegally intercepted communication, the plaintiff's damages will increase by that amount per day. The $10,000, on the other hand, is a measure of liquidated damages when

neither the actual harm nor the *per diem* calculation exceeds this fixed sum. We thus conclude that the $10,000 is designed to compensate a plaintiff for all of the transgressor's misdeeds under the wiretapping statute arising out of a closely related course of conduct that takes place over a relatively short period of time.

Congress could quite reasonably have determined that a $10,000 liquidated damage award to the plaintiff is sufficiently sizable to deter violators of the wiretapping statute, especially in light of the fact that punitive damages are available under subsection (b) of the statute to punish egregious offenders. *See* 18 U.S.C. § 2520(b)(2). Because Congress provided no legislative history when § 2520 was amended, its intent must be inferred from the language of the statute itself. We believe that the $10,000 "single sum" approach is the most reasonable inference based on the language and structure of subsection (c).

The district court's "$10,000 per violation" approach, on the other hand, appears to misinterpret the statutory scheme and leads to highly inflated damage awards. If every detailed violation resulted in a $10,000 award to each plaintiff, the total would bankrupt most transgressors. For example, if a one-time illegal wiretap were to intercept a conference call between 20 parties, and the recording was then played on two different occasions, the district court's approach would require a $600,000 damage award (one award for intercepting the communication and two for disclosing it, multiplied by 20 plaintiffs).

■ In the present case, we are satisfied that the recordings, disclosures, and use of the illegally intercepted communications are sufficiently interrelated and time-compacted so as to not invoke multiple applications of the $10,000 statutory award. We need not decide whether violations of the statute widely separated by time, place, or people would lead to a different result, because that question is

not currently before us. Instead, we will leave such variations for future cases to decide.

### 3. The district court may decline to award damages

The Abshers contend that the district court abused its discretion in awarding any damages at all to the employees. This presupposes that the district court had discretion to refuse to impose damages, which is yet another issue of first impression in this circuit.

█ The plain meaning of the statute appears to support the Abshers' interpretation. The text of § 2520(c)(2) states that "the court *may* assess . . . damages." (emphasis added). The use of the term "may" in a statute is generally construed as permissive rather than as mandatory. *See, e.g., Whitehead v. Richardson,* 446 F.2d 126, 128 (6th Cir.1971) (holding that the district court did not abuse its discretion in refusing to award attorney fees when the statute used the verb "may").

█ Moreover, Congress amended the statute in 1986, changing the operative verb in this subsection from "shall" to "may." "Where the words of a later statute differ from those of a previous one on the same . . . subject, the Congress must have intended them to have a different meaning." *Muscogee (Creek) Nation v. Hodel,* 851 F.2d 1439, 1444 (D.C.Cir.1988). One would therefore assume that Congress intended to invest district courts with the discretion to not award damages in appropriate cases.

Our sister circuits, however, have split over this issue. The Seventh Circuit, for example, has held that district courts lack discretion to withhold damages. *See Rodgers v. Wood,* 910 F.2d 444 (7th Cir. 1990) (holding that the lack of a legislative record supporting the change from "shall" to "may," combined with other amendments to the statute, indicate that Congress did not intend to give the district courts discretion). On the other hand, the Fourth Circuit held that district courts do have discretion to withhold damages. *See Nalley v. Nalley,* 53 F.3d 649 (4th Cir. 1995) (holding that the plain language of the statute and the fact that Congress changed the operative verb from "shall" to "may" are clear signs that Congress intended district courts to have such discretion). The Eighth Circuit followed the Fourth Circuit's approach in *Reynolds v. Spears,* 93 F.3d 428 (8th Cir.1996) (affirming the district court's determination that damages under the wiretapping statute are discretionary).

█ We find that the plain language of the statute compels the conclusion that the district courts have the discretion to decline the imposition of damages. Congress expressly changed the verb from a mandatory form to a permissive one. "In all cases of statutory construction, the starting point is the language employed by Congress." *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir.1995). Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). A court should look beyond the language of the statute only when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (holding that RICO applies to both legitimate and illegitimate enterprises because the statute refers only to "enterprises").

In this case, a literal interpretation of the word "may" does not lead to internal inconsistencies or an absurd result. There is thus no reason to look beyond the plain

language of the statute. We therefore agree with the Fourth and Eighth Circuits that 18 U.S.C. § 2520(c)(2) gives the district courts discretion in deciding whether to assess damages.

### 4. The proper inquiry under the statute

■ For all of the reasons set forth above, we hold that the proper inquiry for a district court awarding damages under 18 U.S.C. § 2520(c)(2) should be as follows:

(1) The court should first determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any. *See* 18 U.S.C. § 2520(c)(2)(A).

(2) The court should next ascertain the number of days that the statute was violated, and multiply by $100. *See* 18 U.S.C. § 2520(c)(2)(B).

(3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is to be the presumed award. *See id.*

(4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it. *See* 18 U.S.C. § 2520(c)(2).

■ In the present case, the employees suffered no actual damages, nor were there any profits derived by Charles Absher from the illegally intercepted communications. The violations arose out of a closely related series of events that took place over a very short period of time, covering no more than eight days (March 21, 1996 until March 28, 1996). Because there were no actual damages and only $800 in *per diem* damages, and because each of these amounts is less than $10,000, the latter figure is the proper sum to tentatively award each employee.

The final step of the analysis, however, is for the district court to exercise its discretion in determining whether the employees should receive any damages at all.

Charles Absher points out that he did not profit from the recordings, that the employees in this case suffered no financial harm, and that the violation was for a relatively brief period of time.

Although the district court briefly discussed whether § 2520(c)(2)(B) damages are discretionary, it was in a different context. In addressing the claim of the Abshers' co-defendant, Sumner County, the district court held that it did not need to reach the issue of whether the statute contemplates discretion because it found that an award of damages was appropriate based on the facts before it. The district court also examined two cases in which other district courts had declined to impose damages, and apparently concluded that the facts in both cases represented *de minimis* violations of the statute. It then examined Charles Absher's actions in this case and concluded that it was "the type of conduct that the statute seeks to prevent."

Although this reasoning is an important part of the analysis under § 2520(c)(2), it is not sufficient to resolve the issue. Each employee's claim needs to be considered individually as the district court exercises its discretion in deciding whether that particular employee is entitled to the $10,000 in statutory damages under § 2520(c)(2)(B). Because this analysis was not carried out under the proper interpretation of the statute as set forth in this opinion, we will remand the issue of damages for further consideration by the district court.

### III. CONCLUSION

For all of the reasons set forth above, the district court's grant of summary judgment against Charles Absher is **AFFIRMED**. The district court's grant of summary judgment against Della Absher, however, is **REVERSED** and judgment is **GRANTED** in her favor. Finally, the district court's calculation of damages is **REVERSED** and the issue of damages is **REMANDED** to the district court for fur-

ther proceedings consistent with this opinion.