DIRECTV, INC., Plaintiff,

v.

Albert PLUSKHAT, Defendant.

No. 1:02–CV–826.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 2, 2004.

Angela M. Brown/Janice Keays Smith, for Plaintiff.

Michael T. Maddaloni, for Defendant.

## OPINION

QUIST, District Judge.

Plaintiff, DIRECTV, Inc. ("DIRECTV"), has sued Defendant, Albert Pluskhat ("Pluskhat"), alleging that he violated the Federal Communications Act of 1934, 47 U.S.C. § 605, the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2510–22 (the "Wiretap Act"), and Michigan common law by purchasing and using access cards and other devices ("Pirate Access Devices") to decrypt, receive, and view DIRECTV's encrypted satellite transmissions of television programming. DIRECTV seeks injunctive relief, statutory damages, or, in the alternative, compensatory and punitive damages, attorney fees and costs. Now before the Court are DIRECTV's motion for summary judgment on its claim under the Wiretap Act and Pluskhat's motion to dismiss and for attorney fees and sanctions and amended motion to dismiss and for attorney fees and sanctions.

### I. *Facts*

DIRECTV is one of the nation's largest providers of satellite television programming. DIRECTV delivers its broadcasts throughout the United States to customers who have paid a subscription fee. In order to receive the broadcasts, a DIRECTV subscriber must possess a satellite dish, an integrated receiver/decoder, and an access card to unscramble the signals. DIRECTV provides this equipment to its subscribers either for free or for a small fee. The access card, otherwise known as an ISO–7816 compliant smart card, is roughly the size of a credit card and contains a small microprocessor chip that is inserted into a DIRECTV receiver. DIRECTV programs the subscriber's access card with data corresponding to the sub-

scriber's level of service. In other words, the cards are electronically programmed to block or unblock television channels and specific programs to include only the programming for which the subscriber has paid.

In spite of DIRECTV's efforts to prevent unauthorized reception and use of its programming, individuals have sought to illegally decrypt and intercept DIRECTV's signal without authorization by use of various Pirate Access Devices. Although Pirate Access Devices vary in type, they essentially allow the user to modify the access card to circumvent DIRECTV's security measures and decode its satellite signals.

On May 25, 2001, DIRECTV executed writs of seizure at the mail shipping facility used by several major suppliers of Pirate Access Devices, including Vector Technologies; DSS–Stuff; Shutt, Inc.; Intertek; WhiteViper; and DSS–Hangout (the "Suppliers"). Among other things, DIRECTV obtained shipping records, email communications, and credit card receipts identifying purchasers, or end-users, of illegal Pirate Access Devices from the Suppliers. DIRECTV used that information to obtain settlements (including monetary payments, stipulated injunctive relief, and turnover of the devices) from end-users or, failing a settlement, to sue end-users in federal court. This is one of perhaps thousands of suits DIRECTV has filed throughout the country against end-users.

On of about January 22, 2001, Pluskhat purchased a Viper Super Unlooper with X Code ("Unlooper") from WhiteViper Technologies. (Compl.¶ 7(a); Pluskhat Dep. at 14, 28, Pl.'s Br. Supp. Mot. Ex. 2.) Pluskhat testified that he learned about the WhiteViper website and the possibility of receiving free DIRECTV as a result of an e-mail he received. (Pluskhat Dep. at 18.) Pluskhat purchased the Unlooper in order to receive free DIRECTV. (*Id.* at 22.) Pluskhat testified that after he received the Unlooper he plugged it into his computer to download software from the internet to enable the Unlooper to alter his DIRECTV access card. (*Id.* at 30.) Pluskhat testified that nothing happened when he attempted to download the software. (*Id.*) Pluskhat testified that he plugged his DIRECTV access card into the Unlooper and then put it back into his DIRECTV receiver, but he was not able to receive any additional channels. (*Id.* at 32.) Pluskhat eventually destroyed the Unlooper. (*Id.* at 33.) At the time he purchased the Unlooper, Pluskhat was a DIRECTV subscriber and possessed all of the necessary equipment to receive DIRECTV's satellite signals. (*Id.* at 14–15.)

## II. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## III. *Discussion*

In its complaint, DIRECTV asserts four separate claims, including: (1) unau-

thorized reception of satellite signals in violation of 47 U.S.C. § 605(a); (2) unauthorized interception of satellite communications in violation of 18 U.S.C. § 2511(1)(a); (3) possession of pirate access devices in violation of 18 U.S.C. 2512(1)(b)[1]; and (4) conversion. At the pre-trial conference held on February 2, 2004, DIRECTV indicated that it will not pursue its claims for violation of § 2512 and conversion. Therefore, the Court will dismiss those claims with prejudice, and the only claims before the Court are DIRECTV's claims under 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a).

## A. Pluskhat's Motion To Dismiss

### 1. Procedural Background

On September 25, 2003, Pluskhat filed a motion to dismiss and for attorney fees and sanctions. Although the motion was captioned as a motion to dismiss, Pluskhat stated that he was seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Pluskhat stated that he was seeking summary judgment because DIRECTV's damages are completely speculative and because DIRECTV has been uncooperative in discovery by violating the Federal Rules of Civil Procedure as well as this Court's orders. For relief, Pluskhat requested that the Court: (1) dismiss DIRECTV's complaint based upon its failure to comply with discovery requirements and its inability to prove the existence of damages; (2) impose "as many Rule 11 sanctions as possible" against DIRECTV and its counsel based upon their discovery responses, violation of the Court's orders, threats to defense counsel, and their constant lateness; (3) award Pluskhat attorney fees in the amount of $2,500 for preparation of the motion as

well as having to travel to Montcalm County for an improperly noticed deposition; (4) order DIRECTV's expert to respond to Pluskhat's written deposition questions per the agreement of counsel; and (5) reimburse Pluskhat for lost time from work for the improperly noticed deposition. (Def.'s Br. Supp. Mot. at 26–27.) On October 6, 2003, Pluskhat filed an amended motion to dismiss and an amended request for relief in which he added a request that the Court impose Rule 11 sanctions against DIRECTV for its falsified allegations that Pluskhat assisted others in receiving DIRECTV's satellite transmissions. On October 28, 2003, after DIRECTV filed its response to Pluskhat's motion, Pluskhat filed his response (reply), in which he withdrew his request for Rule 11 sanctions (requests for relief nos. 2 and 6) and requested that the Court *sua sponte* order that DIRECTV show cause for its violations of the Federal Rules of Civil Procedure and sanction DIRECTV under Rule 37.

### 2. Summary Judgment

Pluskhat has moved for summary judgment on the grounds that DIRECTV is unable to prove that Pluskhat actually used the Unlooper and DIRECTV's damages are entirely speculative. The Court finds that neither ground is sufficient to support Pluskhat's motion for summary judgment.

 DIRECTV has sued Pluskhat for receiving or intercepting DIRECTV's satellite signal in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a). In order to prove its claims under these statutes, DIRECTV must prove that Pluskhat received, assisted in receiving, or inter-

---

[1] This claim is actually denominated as possession of pirate access devices in violation of 18 U.S.C. § 2511(1)(b) but the Court understands this claim to be based upon § 2512(1)(b) in light of the references to § 2512(1)(b) in the body of the claim as well as the Court's review of the statutes.

cepted DIRECTV's satellite transmissions. *See DirecTV v. Karpinsky,* 269 F.Supp.2d 918, 926 (E.D.Mich.2003), *vacated in part upon reconsideration,* 274 F.Supp.2d 918 (E.D.Mich.2003). Pluskhat devotes a good deal of argument to the point that DI-RECTV has not produced any evidence of actual usage. Based upon his argument, it appears that Pluskhat believes that DI-RECTV must offer direct evidence of actual interception in order to establish its claim. However, a plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence. *See Walker v. Darby,* 911 F.2d 1573, 1578 (11th Cir.1990).

■ DIRECTV's circumstantial evidence of Pluskhat's actual interception of DIRECTV's signals consists of the following: (1) Pluskhat admitted that he purchased the Unlooper for the purpose of receiving free DIRECTV; (2) Pluskhat knew of the Unlooper's purpose when he purchased it; (3) Pluskhat attempted to download software onto the Unlooper that was designed to assist in the interception of DIRECTV's signals; (4) the sole purpose of the Unlooper is to "unloop" an access card "looped" by DIRECTV's electronic countermeasures; and (5) Pluskhat purchased the device the day after DI-RECTV sent the signal that looped Pluskhat's card. The Court concludes that this evidence is sufficient to create a genuine issue as to whether Pluskhat actually intercepted DIRECTV's signal and to defeat Pluskhat's motion for summary judgment. In spite of Pluskhat's argument that the timing of his purchase was merely a coincidence, a fact-finder could reasonably infer from DIRECTV's evidence that Pluskhat purchased the Unlooper to repair a modified access card that was "looped" by DI-RECTV. Pluskhat's claim of coincidence is more appropriate as argument at trial rather than in a summary judgment motion.

■ Pluskhat's second argument is that he is entitled to summary judgment because DIRECTV's damages in this case are purely speculative. Pluskhat notes that DIRECTV has failed to provide any explanation or evidence to support its claim for damages, including when or the number of times that Pluskhat used the Unlooper to receive DIRECTV's signal. The answer to this argument is that DI-RECTV is not required to prove actual damages because statutory damages are available under both 18 U.S.C. § 2520(c) and 47 U.S.C. § 605(e)(3)(C)(i)(II). If DI-RECTV succeeds in proving that Pluskhat actually intercepted or received DI-RECTV's signal without authorization, DI-RECTV is entitled to recover "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000" under the former section and "statutory damages for each violation ... in a sum of not less than $1,000 or more than $10,000" under the latter section. Although Pluskhat realizes that DIRECTV may recover statutory damages, his issue is really how the amount of statutory damages is determined if there is no evidence of actual usage. The answer is that the amount of the award lies within a court's discretion. *See Dorris v. Absher,* 179 F.3d 420, 430 (6th Cir.1999) (stating that the district court has discretion to determine whether a plaintiff is entitled to receive $10,000 in damages or no damages at all); 47 U.S.C. § 605(e)(3)(C)(i)(II) (allowing between $1,000 and $10,000 in statutory damages "as the court considers just"). In discussing the discretionary nature of an award under § 2520, the court in *Dorris* pointed out that the defendant did not profit from the recordings, the plaintiffs suffered no financial harm, and the violation was for a relatively brief period. *Dorris,* 179 F.3d at 430. Similarly, in assessing statutory damages pursuant to § 605(e)(3)(C)(i)(ii), courts have considered whether the defendant profited or realized

a financial gain from the interception. *See DirecTV, Inc. v. Kaas,* No. C02–4047–PAZ, 294 F.Supp.2d 1044, 2003 WL 22965078 (N.D.Iowa Dec.17, 2003) (awarding $1,000 in statutory damages on default); *Kingvision Pay–Per–View, Ltd. v. Recio,* No. 02 Civ. 6583(JSM) RLE, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (awarding $4,000 in damages for a willful violation). This is not an exhaustive survey of considerations for statutory damage awards, but consideration of that issue is more appropriate for trial, assuming that DIRECTV is able to establish a violation. Therefore, the motion will be denied.

## 2. Discovery Violations

As noted above, Pluskhat also seeks relief for certain alleged discovery violations. Those violations include: (1) DIRECTV's failure to provide complete and timely responses to Pluskhat's discovery; (2) DIRECTV's rescheduling of the deposition date for its Rule 30(b)(6) witness without ten days notice as required by the Court's July 1, 2003, Case Management Order; and (3) DIRECTV's unilateral change of the location of Pluskhat's deposition without notice of the correct time and place of the deposition.

### a. Discovery Responses

■ Pluskhat complains that DIRECTV failed to provide timely and adequate responses to his discovery requests. Pluskhat admits that DIRECTV has actually provided responses and even supplemental responses. The interrogatory answers Pluskhat cites in his motion sought information relating to DIRECTV's allegations that Pluskhat assisted others in receiving DIRECTV satellite transmissions without authorization, DIRECTV's allegations that Pluskhat actually used the illegal Pirate Access Device (Unlooper), and DIRECTV's damages.

■ Having reviewed DIRECTV's responses to Pluskhat's discovery requests, the Court does not find those answers evasive or incomplete such that sanctions should be awarded under Rule 37. Pluskhat's assertion that DIRECTV's answers are evasive or incomplete is based upon his view, contrary to the discussion above, that DIRECTV must present direct evidence that Pluskhat used the Unlooper to receive DIRECTV's signals and that DIRECTV must present evidence of actual damages. Given that DIRECTV may prove its case with circumstantial evidence and need not prove that it has suffered actual damages, the Court concludes that DIRECTV's responses are adequate. With regard to DIRECTV's answer regarding its evidence that Pluskhat assisted others in receiving DIRECTV's satellite transmissions, the Court notes that assisting others in receiving satellite transmissions is merely one means by which a person can violate 47 U.S.C. § 605(a). DIRECTV's theory appears to be that if Pluskhat actually received DIRECTV's signal, he likely assisted others in receiving DIRECTV's signal because his family members probably viewed the unauthorized programming. Given that DIRECTV may prove its case entirely by circumstantial evidence, its theory is not unreasonable and its response to Pluskhat's interrogatory was not incomplete. Therefore, Pluskhat is not entitled to any relief on this aspect of his motion.[2]

### b. Rescheduling of Rule 30(b)(6) Deposition

Paragraph 7 of the Court's July 1, 2003, Case Management Order provided

---

2. The Court does note that Pluskhat correctly argues that DIRECTV's responses to his discovery requests were late. However, DIRECTV has provided sufficient answers to Pluskhat's discovery requests and Pluskhat has failed to cite any authority supporting an award of sanctions based solely upon a party's untimely answers.

that DIRECTV "shall give at least **ten (10) days notice** of the deposition" of its representative for a Rule 30(b)(6) deposition. Initially, DIRECTV notified defense counsel of the availability of its Rule 30(b)(6) representative for a deposition on July 28, 2003 and provided the required ten days notice. (Johnson Decl. ¶ 2, Pl.'s Resp. Def.'s Mot. Ex. 5.) On July 21, DIRECTV informed its counsel, Josh Johnson, that the witness designated for the Rule 30(b)(6) deposition could not make the July 28 date due to a death in the family and that the alternate designee was not available on that date. (*Id.* ¶ 3.) On July 23, after discussion with all defense counsel, DIRECTV sent an amended notice to counsel setting the deposition date for July 29. (Am. Dep. Notice, Def.'s Br. Supp. Ex. I.) All defense counsel except Pluskhat's counsel, Michael Maddaloni, were available for the rescheduled deposition. (Johnson Decl. ¶ 4.) Accordingly, Maddaloni proposed that DIRECTV's counsel allow Maddaloni to submit two written deposition questions to DIRECTV's witness in lieu of attending the deposition. (Letter from Maddaloni to Brown of 7/25/03, Def.'s Br. Supp. Ex. K.) During the deposition, Johnson apparently offered Maddaloni the opportunity to fax the questions to the deposition to be answered by the deponent, but Maddaloni declined the offer, stating that he would give DIRECTV thirty days to answer. (Johnson Decl. ¶ 5.) On or about July 29, Maddaloni served two written deposition questions on DIRECTV. (Pl.'s Resp. Br. Ex. 4.) By letter dated August 27, 2003, DIRECTV's counsel declined to answer the deposition questions, either because they were actually written interrogatories which were not yet due or because Maddaloni failed to comply with the service requirements of Rule 31. (Letter from Cook Smith to Maddaloni of 8/27/03, Def.'s Br. Supp. Ex. N.) DIRECTV apparently never answered the proposed deposition questions/interrogatories, and Pluskhat therefore requests that the Court either order DIRECTV to respond to his written deposition questions or allow Pluskhat's counsel to depose DIRECTV's representative.

Based upon its review of the written questions, the Court declines to grant the requested relief. The questions essentially ask how DIRECTV can prove that Pluskhat actually used the Unlooper. Pluskhat is not entitled to relief because DIRECTV has already identified the evidence upon which it will rely (including Pluskhat's subscriber history) to prove that Pluskhat used the Unlooper to actually intercept DIRECTV's signals without authorization. (Pl.'s Supplemental Resps. to Def.'s 1st Set of Interrogs. No.4, Pl.'s Br. Supp. Ex. H.) This evidence is not direct evidence, but it is sufficient for DIRECTV to prove a circumstantial case. Therefore, it is unnecessary to require DIRECTV to answer a question that has already been answered.

### c. Change of Pluskhat's Deposition Location

■ DIRECTV initially noticed Pluskhat's deposition for July 21, 2003, at a location in Montcalm County. Sometime after the notice was sent, Johnson and Maddaloni discussed Grand Rapids as an alternate deposition site. However, Johnson and Maddaloni differ on the outcome of their discussion. Johnson claims that Maddaloni agreed that he and Pluskhat would come to Grand Rapids for the deposition on July 30. (Johnson Decl. ¶ 7.) Maddaloni contends that there was no agreement regarding a new deposition location. (Def.'s Reply Br. at 9.) In any event, Johnson did not send out a revised deposition notice, and on July 30, Maddaloni and Pluskhat appeared at the Montcalm County location and found no DIRECTV counsel present. In a subsequent tele-

phone conversation later in the day, Johnson offered Maddaloni the possibility of conducting the deposition in Grand Rapids that day. The offer was declined, but the deposition was rescheduled for and occurred on August 11, 2003, in Lansing. Pluskhat requests that the Court order DIRECTV to reimburse Pluskhat for his attorney fees for travel time to and from Montcalm County and reimburse Pluskhat for his lost time at work for the improperly noticed deposition.

The Court will deny this request because it appears that the unnecessary trip to Montcalm County resulted from a misunderstanding between counsel. While DIRECTV should have re-noticed the deposition for the alternate location, if counsel in fact agreed on an alternate location, the Court declines to assess any blame for the misunderstanding in light of the lack of any clear indication of fault on the part of either counsel.

### 3. Allegation Of Fabricated Death

In the brief in support of his motion, Maddaloni recounted how DIRECTV's counsel prematurely terminated Pluskhat's deposition for the reason that she had just received news that her husband's (an attorney at the same firm) grandmother had just died. Maddaloni stated that he "dislike[d] the fact that he is left with the genuine feeling that the alleged death was in fact a fabrication." (Pl.'s Br. Supp. at 26.) Understandably, DIRECTV's counsel took offense to this statement and responded both by providing a death certificate as proof (as well as affidavits of counsel) and by suggesting that Maddaloni should be sanctioned under Rule 11. Although Maddaloni's comments were crass and unnecessary, the Court does not believe that they are deserving of Rule 11 sanctions. Nonetheless, the exhibits the Court has reviewed show a high level of acrimony between counsel (on both sides of the fence) indicative of a lack of

professionalism and respect, which is generally not tolerated in this district or by this Court. The Court makes these observations and reminds counsel of their obligations to the Court, each other, and their clients, with the expectation that this and any other case in which counsel appear will be handled in a respectful and professional manner.

### B. DIRECTV's Motion For Summary Judgment

DIRECTV contends that it is entitled to summary judgment on its claim that Pluskhat violated 18 U.S.C. § 2511(1)(a) because Pluskhat's admissions are sufficient to show that Pluskhat "intercepted" DIRECTV's satellite signals. Section 2511(1)(a) imposes criminal liability upon any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire oral, or electronic communication." 18 U.S.C. § 2511(1)(a). In addition, 18 U.S.C. § 2520(a) creates a private cause of action for violations of § 2511. *DIRECTV, Inc. v. Hosey*, 289 F.Supp.2d 1259, 1264 (D.Kan.2003); *DIRECTV, Inc. v. Childers*, 274 F.Supp.2d 1287, 1288 (M.D.Ala.2003); *Directv, Inc. v. Jerolleman*, No. Civ. A. 03–1465, 2003 WL 22697177, at *2 (E.D.La. Nov.12, 2003). That section provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

DIRECTV argues that it is entitled to summary judgment even though Pluskhat

denies that he was able to view any DIRECTV programming beyond that provided by his subscription. DIRECTV theorizes that all DIRECTV subscribers, regardless of whether they are legitimate users or are attempting to access additional programming without authorization, "intercept" DIRECTV's satellite signals for purposes of §§ 2511(a)(1) and 2520(a) whenever their receivers are turned on. DIRECTV notes that the datastream for the entire range of DIRECTV programming is sent to every subscriber, and DIRECTV uses the access card and receiver in tandem to permit the user to decrypt the portions of the signal they are authorize to receive. Thus, according to DIRECTV, the subscriber's "interception" is unlawful only when he or she attempts to view unauthorized programming. DIRECTV contends that its position is consistent with the exception provided in § 2511(2)(d), which provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

DIRECTV's argument must be rejected because it conveniently ignores several pertinent statutory provisions, most notably, the definition of "intercept," which "means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

18 U.S.C. § 2510(4). In turn, the term "'contents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Thus, under the plain statutory definition, a person must acquire, by sound or other means, the contents of a communication. *See Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742–43 (4th Cir.1994) (concluding that no interception occurred because there was no evidence that any of the defendant's employees "ever listened to, recorded, or otherwise acquired any conversations"); *Thomas v. Ohio Dep't of Rehab. & Corr.*, 36 F.Supp.2d 997, 999 (S.D.Ohio 1998) ("There is no 'interception' by a person or entity that never acquires the contents of any conversation."). DIRECTV fails to cite any case law supporting its rather novel proposition that a person can intercept a communication for purposes of §§ 2511 or 2520 without acquiring, in some way, the contents of the communication.[3] In light of the definition of "intercept" quoted above, DIRECTV's argument is without merit. Moreover, DIRECTV has failed to present any evidence showing that there is no genuine issue of material of fact regarding Pluskhat's interception of DIRECTV programming. Therefore, DIRECTV's motion for summary judgment will be denied.

### IV. *Conclusion*

For the foregoing reasons, the Court will deny both DIRECTV's motion for summary judgment and Pluskhat' motion to dismiss (for summary judgment) and for attorney fees and sanctions. The Court will dismiss DIRECTV's claim based upon the alleged violation of 18 U.S.C. § 2512 and DIRECTV's conversion claim.

---

**3.** DIRECTV's reliance upon § 2511(2)(d) is misplaced, as there must be an interception in order for that section to apply.

An Order consistent with this Opinion will be entered.